IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JOHN WESTFALL, ) | CASE NO. 1:04CV1088 |
| ) | |
| Plaintiff, ) | JUDGE OLIVER |
| ) | |
| v. ) | MAGISTRATE JUDGE HEMANN |
| ) | |
| MAERSK LINE, LIMITED, ) | |
| ) | **CORRECTED REPORT AND** |
| **)** | **RECOMENDATION** |
| Defendant. ) | Docket #28 |
| ) | |

This case is before the magistrate judge on referral.  Before the court is the motion of plaintiff, John Westfall ("Westfall"), to compel defendant, Maersk Line, Limited ("Maersk"), to authorize and pay for continuing medical care and retroactive maintenance and award punitive damages, *i.e.* attorney's fees ("Pl. mot."; Docket #28).  Maersk opposes Westfall's motion ("Def. opp."; Docket #30).  For the reasons given below the magistrate judge recommends that the court grant plaintiff's motion in part and overrule it in part.

I.

The parties agree on the following relevant facts.  Westfall was a crew member of Maersk aboard its vessel *M/V 1st Lt. Alex Bonnyman* in December 2003. On December 19, 2003, while returning to his shop after doing electrical work, Westfall began descending a ladder, slipped, and fell.  In the injury report filed the next day Westfall reported suffering a broken nose, lacerations to his lip and nose, and injury to his right arm.  He also reported a

sore right knee.  Westfall was later re-assigned work activities during that voyage.

Maersk paid Westfall maintenance and cure until December 31, 2004.[1]  During that time Westfall received medical treatment, including a post anterior cervical discectomy, a fusion of the C5-C6 vertebrae, and an arthroscopic decompression. All treatment was related to his neck and shoulder injuries.  Westfall returned to full-time employment ashore on May 28, 2004.

In September 2004 Westfall began experiencing stiffness and pain in his right knee. On March 22, 2005 Westfall visited Henry Kurtis Biggs, M.D. about his knee problems.  This was the first time since the accident that Westfall had sought treatment for his knee.  An MRI of Westfall's knee revealed a radial tear of the right meniscus.  On April 7, 2005 Dr. Biggs recommended physical therapy and anti-inflammatory medication, deferring consideration of surgical intervention pending the results of more conservative treatment.  Westfall refused the medication and said that he was unable to undergo physical therapy because of insurance problems.  Although Dr. Biggs agreed in his deposition that age can cause this type of injury and that it would be unusual for someone not to seek treatment for two and one-half years after suffering such an injury, he opined that the torn meniscus was most likely the result of Westfall's fall on December 19, 2003.

Westfall filed this action on January 22, 2004.  He seeks damages pursuant to the Jones Act and maintenance and cure until he reaches maximum medical improvement.

---

[1] Maersk contends that it actually paid Westfall maintenance for some additional months after this date due to a clerical error.  Maersk is not seeking return of the inadvertently paid funds, but it reserves its right to set off of those funds.

Westfall now moves for maintenance and cure to allow him to obtain knee surgery. Maersk opposes Westfall's motion.

II.

Maritime law provides remedies for injured sailors not available to persons in other professions:

> [S]eamen who suffer illness or injury on the job look to special relief . . . , including maintenance [and] cure. . . . Maintenance refers to a shipowner's obligation to provide a mariner with food and lodging if he becomes injured or falls ill while in service of the ship, while cure alludes to the duty to provide necessary medical care and attention. A shipowner is liable to pay maintenance and cure to the point of maximum cure, that is, when the seaman's affliction is cured or declared to be permanent.

*Blainey v. American Steamship Co.,* 990 F.2d 885, 886-87 (6th Cir. 1993) (citations omitted).

Maintenance and cure differs from damages awarded in tort intended to make an injured party whole:

> [M]aintenance and cure is payable even though the shipowner is not at fault, and regardless of whether the seaman's employment caused the injury or illness. . . . . "[T]he duty to pay maintenance and cure does not necessarily end with the voyage on which the seaman falls ill, but can continue beyond that voyage." . . . [H]owever, . . . in cases where the seaman suffers from a disease "which *manifests* itself during his employment, but is not caused by it," the shipowner's duty is to expend such funds as are necessary only to put the seaman in such condition "as reasonably may be expected to result from nursing, care, and medical treatment." Thus, the shipowner is not required to support the ill seaman for the rest of his life. . . . [Generally, a] shipowner must pay maintenance and cure for any illness or injury which occurred, was aggravated, or manifested itself while the seaman was in the ship's service.

*Stevens v. McGinnis, Inc.*, 82 F.3d 1353 (6th Cir. 1996) (citations and emphasis omitted) (quoting *Calmar S.S. Corp. v. Taylor,* 303 U.S. 525, 530 (1938)).

The Supreme Court has interpreted the obligation to provide maintenance and cure

3

liberally:

> It has been the merit of the seaman's right to maintenance and cure that it is so inclusive as to be relatively simple, and can be understood and administered without technical considerations. It has few exceptions or conditions to stir contentions, cause delays, and invite litigation.

*Farrell v. United States*, 336 U.S. 511, 516 (1949).  The obligation to provide maintenance and cure is far broader than remedies designed to protect workers in other trades:

> So broad is the shipowner's obligation that negligence or acts short of culpable misconduct on the seaman's part will not relieve him of the responsibility. Conceptions of contributory negligence, the fellow-servant doctrine, and assumption of risk have no place in the liability or defense against it. Only some wilful misbehavior or deliberate act of indiscretion suffices to deprive the seaman of his protection. . . [The seaman's] employer's responsibility for maintenance and cure extends beyond injuries sustained because of, or while engaged in, activities required by his employment. In this respect it is a broader liability than that imposed by modern workmen's compensation statutes. Appropriately it covers all injuries and ailments incurred without misconduct on the seaman's part amounting to ground for forfeiture, at least while he is . . . "subject to the call of duty as a seaman, and earning wages as such."

*Aguilar v. Standard Oil Co.*, 318 U.S. 724, 730-31 (1943) (citations and footnotes omitted). A sailor is entitled to maintenance and cure even if the illness or injury occurs while ashore, as long as the sailor is subject to the call of duty.  *Id.* at 737.  In line with the Court's intent that sailors be protected and litigation avoided, "[w]hen there are ambiguities or doubts, they are resolved in favor of the seaman."  *Vaughan v. N.J. Atkinson*, 369 U.S. 527, 532 (1962).

Courts look unfavorably upon employers who fail to provide maintenance and cure when it is owed.  A sailor who must work when a former employer refuses to provide maintenance and cure is not required to set off earnings against an eventual award.  *Id.* at 533.  Moreover, if the former employer unreasonably refuses to provide maintenance and cure, the sailor may recover attorney's fees as damages.  *Id.*

4

III.

Westfall asserts that Maersk unreasonably failed to authorize necessary surgery to repair the meniscus on his right knee and failed to pay appropriate maintenance during his period of disability and cure. Maersk contends that Westfall's injury was not caused by his shipboard accident and denies that it owes Westfall any additional sums for maintenance and cure.

In support of its contention that Westfall's torn meniscus was not caused by his shipboard accident, Maersk cites Dr. Biggs' deposition for the propositions that he had no knowledge of Westfall's accident, that it was unusual not to seek treatment for a torn meniscus for two and one-half years, and that normal stresses on a knee over a lifetime can result in a torn meniscus. These arguments are unavailing. Dr. Biggs has opined that Westfall's torn meniscus was probably the result of his accident. While Maersk succeeds in raising a certain amount of doubt about the correctness of that opinion, that doubt must be resolved in favor of Westfall.

This does not resolve the matter, however. While Westfall is due maintenance and cure, the record does not support the contention that he requires surgery. Dr. Biggs had recommended physical therapy and anti-inflammatory medication as the appropriate initial treatment for Westfall's condition. Dr. Biggs explained that surgery to repair the damage was an option, but he preferred to try more conservative treatment before trying surgical intervention. While Dr. Biggs also noted in his deposition that delaying physical therapy can affect its outcome, he does not state that it would be futile.

Westfall specifically moves the court to compel Maersk to authorize "necessary

5

medical treatments, including, but without limitation, meniscectomy, rehabilitation, physical therapy, functional capacity evaluation, work hardening, medication, etc." until he reaches maximum medical cure. Pl. mot. at 11. The magistrate judge recommends that the court find Maersk liable to Westfall for a period of maintenance and cure but that plaintiff be required to pursue the conservative treatment recommended by his physician before demanding surgery.

Westfall also moves the court to compel Maersk to pay retroactive maintenance. Westfall does not specify, however, the amount of retroactive maintenance he seeks. Westfall does not deny that his knee was not of great concern to him until September 2004 when he began experiencing sufficient stiffness and pain to lead him to seek medical treatment for his knee. It is unclear, therefore, the extent of retroactive maintenance sought by Westfall and what retroactive maintenance would be appropriate. Until these matters are resolved, the court should overrule Westfall's request for retroactive maintenance.

The magistrate judge also recommends that the court overrule plaintiff's request for attorney's fees related to the instant motion as punitive damages. While it might be argued that Maersk's refusal to authorize *any* medical treatment was unreasonable, Westfall specifically requested that Maersk authorize "preparatory physical therapy" and "an arthroscopic meniscectomy of the medial meniscus of the right knee . . . ." *Id.* at 2. There is sufficient doubt regarding plaintiff's demand for surgery, in particular, that Maersk's refusal to authorize them was not unreasonable. Moreover Westfall appears to have been less than willing to pursue alternatives to surgical repair.

IV.

For the reasons given above the magistrate judge recommends that the court grant

plaintiff's motion in part by finding Maersk liable to Westfall for a period of maintenance and cure, overrule the motion in part by denying attorney's fees as punitive damages, and overrule the motion in part by refusing to compel Maersk to pay retroactive maintenance.

Dated:  September 16, 2005	/s/Patricia A. Hemann
Patricia A. Hemann
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).